```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

KENNETH WORTHINGTON,            :

     Plaintiff,                 :

V.                              :    CASE NO. 3:10-CV-448(RNC)

CARRIS REELS OF CONNECTICUT,    :
INC.,

     Defendant.                 :
```

## RULING AND ORDER

Plaintiff has filed a seven-count amended complaint against his former employer, a manufacturer of industrial products. He seeks damages and other relief for disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12201, *et seq.* ("ADA")(count one) and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51, *et seq.* ("CFEPA")(count two); age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA")(count three) and the CFEPA (count four); retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), the ADA and the ADEA (count five); retaliation in violation of the CFEPA (count six); and wrongful discharge in violation of public policy (count seven).  Defendant has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the retaliation and wrongful discharge claims for failure to state a claim on which relief can be granted.  For reasons that follow, the motion to dismiss is granted in part and denied

in part.

Background

The complaint alleges the following. Plaintiff is 61 years of age. He worked for defendant as a forklift operator from 1966 until 2009. He is unable to read or write. In 1993, he injured his back in the course of his employment and filed a worker's compensation claim. As a result of the injury, his doctor imposed work restrictions prohibiting repetitive bending or heavy lifting.

On April 10, 2009, plaintiff's supervisor informed him that the forklift operator position had been eliminated and, as a result, he was being transferred to a position as an assembler. The assembler position required frequent bending and lifting.

Plaintiff asked to be transferred to a less physically demanding position. He also asked for a copy of his worker's compensation records showing his work restrictions. These requests caused several of defendant's managers to become upset.

Plaintiff subsequently spoke to a manager named Steve. He complained about being transferred to a position that required frequent bending and lifting and asked to be transferred back to his position as a forklift operator. Steve, who is in his 40's, responded, "You are not going outside and sitting on your ass, go inside and work, you are working inside." Steve reiterated that the forklift operator position had been eliminated.

In fact, the forklift operator position had not been eliminated. Within days of his transfer to the assembler position, plaintiff saw younger workers operating the same forklift he operated, performing the same work he performed.

On April 17, 2009, two of defendant's managers, Steve and Brian, approached plaintiff and pressured him to sign a document. They tried to get him to sign the document without explaining it to him, knowing he could not read it himself. Steve said, "We are protecting the company, just sign." Plaintiff refused.

Three days later, plaintiff again saw younger employees driving the forklift. He complained to Steve and Brian that he could not physically perform work on the assembly line, requested an accommodation in the form of lighter work, and again asked to be transferred back to his position as a forklift operator. Steve said he was going to call a meeting later in the day to discuss plaintiff's request for an accommodation and transfer. That afternoon plaintiff met with Steve and Brian and was informed that his employment was terminated due to "lack of work." At the time of the termination, plaintiff had the most seniority of any employee.

## II. Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "only enough facts to state a claim for relief that is plausible on its face". Bell Atlantic Co. v.

Twombly, 550 U.S. 544, 570 (2007). A complaint is plausible when it contains sufficient facts to permit a "reasonable inference" that the defendant is liable. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

A. Retaliation Claims

Retaliation claims under the federal and state antidiscrimination statutes at issue here are analyzed using the framework developed in Title VII cases.[1] A prima facie case requires a plaintiff to show the following: (1) he engaged in an activity protected under the relevant statute; (2) his protected activity was known to his employer; (3) the employer took adverse action against him; and (4) a causal connection exists between the adverse action and the protected activity. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Defendant contends that plaintiff's retaliation claims are implausible because his alleged complaints and requests for accommodation did not occur until after he was transferred to the assembler position, and he admits his inability to perform the duties of an assembler caused his employment to be terminated. Def.'s Mem. at 4. In essence, defendant's argument challenges

---

[1] See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)(ADA retaliation claim); Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997)(ADEA realiation claim); Worster v. Carlson Wagon Lit Travel, Inc., 353 F. Supp.2d 257, 267(D. Conn. 2005), aff'd, 169 Fed. App'x 602 (2006)(CFEPA retaliation claim).

4

plaintiff's ability to prove a causal link between his termination and his protected activity.

Defendant's argument is ill-founded with regard to the retaliation claims based on the protections afforded persons with disabilities under the ADA and the CFEPA.[2] It is true the amended complaint alleges no complaints or requests for accommodation prior to the plaintiff's transfer to the assembler position. But plaintiff has not tacitly admitted that the cause of his termination was his inability to perform the duties of an assembler. On the contrary, he affirmatively alleges that the defendant, through its management employees, deliberately engaged in a course of discriminatory conduct for the purpose of terminating his employment. See Amended Complaint, ¶¶ 29, 30. This course of illegal conduct included transferring him to the assembler position - the duties of which they knew he could not perform due to his medical restrictions - on the pretext that his position as a forklift operator had been eliminated. After he complained about the transfer, and asked to be transferred back, he was promptly terminated on the false ground that there was a lack of work. He was the most senior employee at the time and the work he had been doing as a forklift operator still needed to be done.

---

[2] The CFEPA requires employers to provide reasonable accommodation for an employee's disability. Curry v. Allan S. Goodman, Inc., 286 Conn. 390, 415 (Conn. 2008).

5

Plaintiff's allegations are sufficient to push his retaliation claims sounding in disability discrimination "across the line from conceivable to plausible." See Twombly, 550 U.S. at 570. Accepting his allegations as true, he complained about discriminatory treatment relating to his disability and requested a reasonable accommodation. He was terminated ten days after his first complaint and on the same day as another complaint. Defendant's almost immediate termination of plaintiff after his complaints of disability discrimination yields a plausible retaliation claim. Once a plaintiff establishes that he engaged in protected activity, a causal connection between the activity and the adverse employment action may be "established indirectly by showing the protected activity was followed closely by [the adverse action]." DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir. 1987). Accordingly, the motion to dismiss the retaliation claims sounding in disability discrimination is denied.[3]

Defendant contends that the retaliation claims under Title VII and the ADEA should be dismissed because the amended complaint alleges no facts showing that plaintiff engaged in an activity protected by these statutes. Plaintiff's opposition

---

[3] Defendant argues that plaintiff's retaliation claim under the ADA should be dismissed as duplicative of his discrimination claim. However, the two claims have different elements and a retaliation claim can succeed when a discrimination claim fails. Gold v. Carus, 131 Fed. App'x 748, 750 (2d Cir. 2005).

6

memorandum makes no attempt to rebut defendant's argument on this point. Careful review of the amended complaint discloses no allegations that could be relied on to support a retaliation claim under either Title VII or the ADEA. Accordingly, the motion to dismiss these claims is granted.

B. Wrongful Discharge Claim

Under Connecticut law, an at-will employee may recover in tort for wrongful discharge if "the discharge contravenes a clear mandate of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 (1980). The public policy exception to the at-will employment doctrine is narrow. See Iosa v. Gentiva Health Services, Inc., 299 F.Supp.2d 29, 34-35 (D. Conn. 2004). Plaintiff must allege facts showing that the termination of his employment violated an important and clearly articulated public policy. See Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 701 (Conn. 2002).

Plaintiff alleges that he was discharged for refusing to sign an employment-related document he was unable to read. Defendant moves to dismiss this claim arguing principally that plaintiff has not alleged a violation of any clearly articulated public policy. Plaintiff responds that authority for his wrongful discharge claim can be found in Magnan v. Anaconda Industries, Inc., 193 Conn. 558 (Conn. 1984), where an at-will employee was discharged for refusing to sign a statement he

7

claimed to be inaccurate.  See id. at 560-61.[4]  The complaint in Magnan alleged that the discharge (1) breached an implied covenant of good faith and (2) violated public policy.  With regard to the latter count, the jury was instructed that if the plaintiff's employer sought to have him sign a statement the employer knew to be untrue, the employer's conduct would violate public policy.  Id. at 575, n. 24.  The jury found in favor of the employee on the claim alleging breach of an implied covenant and in favor of the employer on the claim alleging a violation of public policy.  The employer appealed but there was no cross-appeal.  See id. at 559.

Defendant argues that Magnan is distinguishable because plaintiff has not alleged that he was asked to sign a statement his employer knew to be untrue.  I agree.  Plaintiff argues that the document he was pressured to sign might have been false or fraudulent.  But the amended complaint does not allege that the document was false.  Instead it alleges that defendant put undue pressure on the plaintiff to get him to sign a document relating to his employment without explaining the document and its consequences.  Plaintiff points to no statute, regulation or case to support a finding that such conduct violates a clear mandate

---

[4] The plaintiff in Magnan was asked to sign a statement admitting his own complicity in a theft and implicating a co-worker.  He claimed that he refused to sign the statement because he believed it did not accurately reflect what he had previously told the employer about the theft.  See id.

8

of public policy.  Given the limits that have been imposed on the public policy exception to the at-will doctrine, plaintiff's allegations in support of his wrongful discharge claim are legally insufficient.  See Iosa, 299 F.Supp.2d at 35-36.[5]

III. Conclusion

Accordingly, the motion to dismiss (Doc. 18) is hereby granted in part and denied in part.  The Title VII and ADEA retaliation claims and the wrongful discharge claim are dismissed.

So ordered this 5th day of May 2011.

/s/ RNC
Robert N. Chatigny
United States District Judge

---

[5] This ruling does not preclude plaintiff from engaging in discovery to determine what he was asked to sign.  If it turns out the document was false or fraudulent, he can seek leave to amend his complaint to allege a wrongful discharge claim.